DECISION
Litigation spawned by family discord is inevitably difficult and unpleasant for all involved parties. The situation is particularly exacerbated when the individuals are of mature years and previously enjoyed a harmonious, or at least, civil, relationship. The goddess of justice is blindfolded because she must remain oblivious to emotions, sympathies and personalities. Her duty and responsibility must be discharged — and can only be discharged — by a fair, conscientious, dispassionate evaluation of the evidence.
On February 26, 1993 Mary M. Carrellas executed the instrument in controversy, a Living Trust pertaining to the management and eventual disposition of certain real estate. Paragraph five of the instrument states: "This trust is irrevocable and all questions relating to the validity, construction, and effect of the Agreement of Trust shall be governed by the laws of the State of Rhode Island." The trust designated Dr. Anthony T. Carrellas (hereinafter referred to as Anthony) as the trustee and Dr. George Carrellas (hereinafter referred to as George) as his successor. It is silent with regard to trustee vacancy and the method to be employed for the appointment should a vacancy occur.
Anthony, a retired pediatrician, testified that his father purchased the 1 Bliss Mine Road property in 1930. The doctor lived there from 1934-1955 with nine siblings. His mother willed the house to Mary and the trust particularizes the division of assets among twenty-one beneficiaries. In July 1991, Mary was placed in a nursing home as she was compromised by a Parkinson's-type illness.
From the inception of the trust until September 14, 1994, Anthony served as the trustee. In July of 1992, Anthony rented the house to his son, a medical resident, at the rate of $700 per month. Apparently, this occurrence precipitated the commencement of family dissension. Just prior to Anthony's son moving in, George appeared on the property adamantly representing that he was going to continue to use the barn and the garage. To that end, he changed the padlocks on these outbuildings, thereby excluding the new residents. This, and other incidents of harassment, caused Anthony to resign in an effort to avert further controversy.
In September of 1994, Anthony resigned and George succeeded him as trustee. Anthony rendered a full and proper accounting at the time of the transition. George served as trustee until his death in April of 1999. Mercilessly, his widow Beatrice, the trustee in controversy, instructed the Carrellas family that they were not welcome to attend George's wake. It is no wonder that the parties thereafter ceased communicating.
Further discord in the family resulted in litigation over real estate on Broadway and the attendant "Carrellas Partnership." Anthony transferred his interest in the partnership to his sister-in-law on August 22, 1995. Mary transferred her partnership interest to Beatrice on October 26, 2000.[1] On that same day, three additional documents were executed involving Beatrice Carrellas:
 (1) Special Power of Attorney designating Beatrice as Mary's representative and witnessed by Beatrice's son Philip;
 (2) Mary's Last Will and Testament appointing Beatrice as executrix and Philip as successor/executor. Philip is one of the two required witnesses to the will. Nota Bene: Any beneficial devise, gift, or appointment to Philip pursuant to this instrument is utterly null and void. See G.L. (1956) § 33-6-1; Roberts v. Wright, 48 R.I. 139, 136 A. 486 (1927). Additionally, paragraph four of the will devises the residuary of Mary's estate into the trust, of which Philip is also a beneficiary.
 (3). "Designation of Trustee of the Mary M. Carrellas Living Trust." This document, also witnessed by Philip, purports to appoint Beatrice as trustee.
The trust instrument in controversy is styled as an irrevocable trust. It is a cardinal principle of law that unless a settlor reserves the power to modify a trust, the trust cannot be modified either as to dispositive or administrative provisions. Restatement Trusts § 992. Even when the settler does reserve such a power he or she can revoke it only in the particular manner stated, and the same principles are applicable to the modification of a trust as are applicable to its revocation. 3 Scott on Trusts §§ 330.8, 331; cited by Union Trust Co.v. Watson, 76 R.I. 223, 68 A.2d 916 (1949). (See this case also for the issue of reservation, or lack thereof, of power to modify a trust by will). Thus, the purported designation of Beatrice as trustee is null and void as is any bequest Philip stands to take as a beneficiary of Mary's will. Since neither the power to amend nor the power to appoint exist by implication, and since neither was reserved in the instrument, G.L. 1956 § 18-2-1 applies. This section allows the court to appoint suitable person(s) to fill the vacancy.
Even if the designation of the trustee in the document was valid — and clearly it is not — Beatrice is a most unsuitable trustee. She is an individual who sought to exclude beneficiaries from the wake of her husband and who would not even allow beneficiaries upon the trust property-culminating in the outrageous "arrest" of Anthony. Because of her wrongful actions, plaintiffs were forced to come to this court for an order compelling Beatrice to allow them upon the property-something they already had the perfect legal right to do. Beatrice had neither the right nor the power to exclude Anthony from the property as her "appointment" was totally bogus. Any complaint filed by her or Philip is without legal force and truly contemptible. No charge of criminal trespass can be lodged against the doctor because he had, and continues to have, the right to go upon that property at will.
A fiduciary is held to the highest standard of conduct and utmost good faith. Literally, the trustee must inspire "trust" and confidence in the beneficiaries, and never act in a fashion antagonistic to their interests. The demonstration by a trustee, of open, avowed hostility toward a beneficiary is alone sufficient grounds for the removal of a trustee. 90 C.J.S. Trusts § 307 (2002). The animosity among the parties in the instant case is palpable and perpetual.
The Court is ordering the parties forthwith to submit the name of an attorney who is well-versed in "trusts and estates" to act as the trustee of the "Mary M. Carrellas Trust." The attorney must be an individual who has never represented any of the parties to this litigation, or their family members. If no attorney can be agreed upon, each party will submit a list of three qualified attorneys and the court will appoint co-trustees. Plaintiffs' counsel shall prepare an appropriate order.
[1] Of additional concern is the testimony of Dr. Anthony Carrellas (a physician of 37 years practice) describing Mary as of this date: "My sister was not really competent. I thought coercion was taking place two years before she died. Attorney Fisher said he had difficulty conversing with her. She did not seem to get important things."